BEERITE TIRE DISPOSAL/RE-
CYCLING, INC., Plaintiff–
Appellee,

v.

CITY OF RHODES, Iowa,
Defendant–Appellant.

No. 01–0394.

Court of Appeals of Iowa.

April 24, 2002.

Max Buck, of Grimes, Buck, Schoell & Beach, Marshalltown, for appellant.

Curtis Ward, of Brooks & Ward, Marshalltown, for appellee.

Heard by SACKETT, C.J., and HUITINK and HECHT, JJ.

SACKETT, C.J.

Defendant-appellant City of Rhodes, Iowa, appeals the district court's finding, in response to plaintiff-appellee BeeRite Tire Disposal/Recycling's motion for separate adjudication of law points, that Rhodes City Ordinance 124 was invalid and unenforceable due to implied preemption by the state in the area of tire disposal under Iowa Code chapters 455B and 455D (1999). Defendant claims on appeal that the City of Rhodes was entitled to issue Ordinance 124 under its home rule power pursuant to Article 3, Section 38A of the Iowa Constitution, and that Ordinance 124 does not contradict, but rather further regulates, consistent with Iowa statutory

provision, the disposal of tires in the Rhodes community. We reverse and remand to the district court.

■ Because defendant is appealing the district court's separate adjudication of law points only, we deem this to be an interlocutory appeal. We regard defendant's appeal as an application for interlocutory appeal under Iowa Rule of Appellate Procedure 6.2. Iowa R.App. P. 6.1.[1] Having found that the district court's ruling involves substantial rights of the parties, that it will materially affect the final decision, and that our determination of the correctness of the district court's ruling before trial on the merits will better serve the interests of justice, we grant this appeal. Iowa. R.App. P. 6.2.[2]

Plaintiff BeeRite began operations in Rhodes in 1997 under a five-year permit issued by the Iowa Department of Natural Resources (DNR). Apparently the City of Rhodes became uncomfortable with BeeRite's operations and DNR's oversight of them. On April 5, 1999, the City of Rhodes adopted its own ordinance regarding tire disposal. This ordinance, Ordinance 124, was similar to Iowa Code section 455D.11, which governs tire disposal, but it imposed stricter regulations. The district court found these additional restrictions included the following:

1) the ordinance required a permit for a storage facility processing more than 100 tires, when state law only required such a permit for a facility processing more than 500 tires;

2) the ordinance required an additional $100 annual permit fee, payable to the City, when state law only required an $850 annual permit fee, payable to the DNR;

3) the ordinance limited the overall storage of tires to 45,648 cubic feet, when state law imposed the limit at 50,000 cubic feet per pile of tires;

4) the ordinance required a solid metal fence enclosing the facility, when state law required that fence to be chain-link, or its equivalent;

5) the ordinance prohibited more then 45,648 cubic feet of tires being stored in any building on site, while state law prohibited more then 50,000 cubic feet;

6) the ordinance prohibited the storage of more than 50,000 cubic feet of processed waste tires, while state law prohibited storage of more tires than could be processed in a six-month period.

After adopting the ordinance, the City of Rhodes sent BeeRite a letter advising it to cease and desist its business operations until it obtained a local permit. In response, BeeRite brought this action seeking a writ of certiorari declaring the ordinance invalid and unenforceable. Following a hearing on October 30, 2000, the district court found the ordinance invalid.

A separate adjudication of law points is a question of law under Iowa Rule of Civil Procedure 1.454.[3] We therefore review this separate adjudication of law points for correction of errors at law. Iowa R.App. P. 6.4.[4]

■ Article III, Section 38A of the Iowa Constitution provides for municipal home rule:

Municipal corporations are granted home rule power and authority, not in-

---

1. Formerly Iowa Rule of Appellate Procedure 1.

2. Formerly Iowa Rule of Appellate Procedure 2.

3. Formerly Iowa R. Civ. P. 116.

4. Formerly Iowa R. Civ. P. 4.

consistent with the laws of the general assembly, to determine their local affairs and government. . . .

As stated in that section, municipal home rule power cannot be "inconsistent with the laws of the general assembly." *Goodell v. Humboldt County*, 575 N.W.2d 486, 500 (Iowa 1998) (citations omitted). The constitutional grant of home rule power is "carefully qualified so as to withhold the grant of power where it conflicts with [a] state statute." *Id.* at 500, (quoting *Gravert v. Nebergall*, 539 N.W.2d 184, 189 (Iowa 1995)). A local ordinance, however, is *not* inconsistent with a state law unless it is *irreconcilable* with the state law. *Goodell*, 575 N.W.2d at 500; Iowa Code § 364.2(2) (emphasis added). A local law is irreconcilable with state law when the local law prohibits an act permitted by statute, or permits an act prohibited by a statute. *Goodell*, 575 N.W.2d at 500 (citations omitted).

Complicating our inquiry into the reconciliation of state and local law is our attempt to reconcile with these laws the seemingly contradictory statutory provision that a local government may "set standards and requirements which are higher or more stringent than those imposed by state law." *Id.; see* Iowa Code § 364.3(3) [5]. As the supreme court noted in *Goodell*, it is difficult to reconcile section 364.3(3) with the well-settled proposition that a local law is irreconcilable with a state law when it prohibits an act permitted by statute. *See Goodell*, 575 N.W.2d at 500, 501 ("Any distinction between a local ordinance that is inconsistent with state law and one that merely sets a higher standard or requirement is at best subtle."). It would appear that any standard made more stringent by local law pursuant to section 364.3(3) would necessarily be irreconcilable with that law: inherent in the act of further restricting a given activity is the prohibition of some previously permissible action. Nevertheless, we will attempt to determine whether the stricter regulations in this case could be construed under *Goodell* as still in harmony with the statutory scheme for tire storage and disposal.

In *Goodell* the supreme court found the Humboldt County ordinances regarding livestock confinement were irreconcilable with the state statutory livestock confinement scheme because, instead of "merely [setting] more stringent standards to regulate confinement operations," the ordinances "revise[d] the state regulatory scheme." *Id.* at 502.

The court determined that the first of four Humboldt County ordinances, Ordinance 22, irreconcilably revised the state regulatory scheme by creating a right of action in the county which under the state statute would have been impermissible. The state regulatory scheme required that an injured party give notice to the DNR before initiating his or her right of action (prohibiting actions against alleged violators whom the DNR was already pursuing), and that in cases where the civil penalty would exceed $3000, the DNR receive approval from the Environmental Protection Commission (EPC) before pursuing an enforcement action. The county ordinance bypassed all of these regulations, giving the county a right of action regardless of EPC approval or current DNR action. *Id.* at 502.

The second Humboldt County ordinance, Ordinance 23, irreconcilably revised the regulatory scheme by conditioning the op-

---

**5.** In *Goodell* the ordinance at issue was a county ordinance, rather than a city ordinance. The court, therefore, made reference to section 331.301(6) rather than section 364.3(3), the applicable statute here.

eration of a livestock confinement facility upon the posting of financial assurance, an entirely different insurance scheme than the indemnity fund provided for in the statute. *Id.* at 504.

The third Humboldt County ordinance, Ordinance 24, irreconcilably revised the statutory scheme by creating sewage disposal requirements when statutory language had expressly delegated to the DNR the determination of all sewage disposal standards. *Id.* at 504.

The fourth Humboldt County ordinance, Ordinance 25, irreconcilably revised the statutory scheme in a manner similar to the way Ordinance 22 did: it created in the county a right to injunctive relief if a facility were determined, under the ordinance, to be a nuisance, in spite of a statutory rebuttable presumption that no nuisance existed if a facility was found to be compliant with statutory standards. In other words, here again an ordinance created a right of action which would have been clearly impermissible under the wording of the statute. *Id.* at 505–07.

■ We look to *Goodell* in determining whether the ordinances promulgated by the City of Rhodes are similarly irreconcilable with statutory policy and are therefore preempted by the state. We conclude that they are not. In *Goodell*, as well as in *City of Iowa City v. Westinghouse Learning Corp.*, 264 N.W.2d 771, 772 (Iowa 1978) and *Cedar Rapids Human Rights Comm'n v. Cedar Rapids Cmty. Sch. Dist.*, 222 N.W.2d 391, 402–03 (Iowa 1974), the ordinances at issue were irreconcilable because they contradicted the clear policy of the statutory scheme regulating the same subject matter rather than merely increasing the details of the regulation. The contradictory ordinances in those cases bypassed statutorily-mandated routes to relief, authorized rights of action or created violations which were disallowed by statute (not just merely unmentioned by statute), and/or they regulated action in areas where regulation had been expressly delegated to another entity.

In contrast the City of Rhodes's ordinances further restrict the already-enforceable restrictions under Iowa code section 455D.11, thereby further promoting the underlying policy of that statute, but with greater force: they require a permit for storing a minimum of 100 plus tires, rather than a minimum of 500 plus tires; they limit the storage space to 45,648 cubic feet rather than 50,000 cubic feet; they require a solid metal fence rather than a chain link fence; they require an additional permit and fee of $100; they prohibit the storing of more than 45,648 cubic feet of tires in any building rather than 50,000 cubic feet; and their measure of the maximum allowable processed waste tire storage is 50,000 cubic feet rather than the number of tires able to be processed within six months.

We find no statutory scheme which would be either bypassed, contradicted, or overridden by the City of Rhodes's tire disposal regulations in the manner that the local livestock confinement regulations contradicted the legislative scheme in *Goodell.* We therefore find these challenged municipal regulations in and of themselves do *not* unduly modify the tire disposal statutory scheme established by the State and do *not* stand in opposition to regulations promulgated by the Iowa legislature. The only function of these regulations is to impose the additional, non-prohibitive fee of $100, and to further restrict those particular areas of disposal (pile size, minimum number for permit, maximum number, fence type, maximum storage space) which the legislature has already restricted.

Further, the subject matter here is not livestock confinement as it was in *Goodell.* The very subject matter in *Goodell* distinguishes that case. First, livestock confinement is an issue upon which Iowa's economy depends and where there is a clear legislative purpose to issue regulations intending to limit local over-regulation in that area. *See Goodell*, 575 N.W.2d at 503–507. There is no similar legislative agenda to regulate the regulation of tire disposal. Secondly, unlike the problem of livestock confinement waste where resulting pollutants enter air and water and thus flow freely throughout the state, tire piles are confined to one area, and there is consequently less of an inherent need for regulations throughout the state to be uniform in order to make any one regulation enforceable.

For these reasons, and for the reason that were it not effective under facts such as these, Iowa Code section 364.3(3) would be meaningless, we find Ordinance 124 of the City of Rhodes is valid and enforceable. Accordingly, we reverse the district court's determination to the contrary and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**