# IN THE SUPREME COURT OF IOWA

No. 40 /04-1914

Filed April 14, 2006

**IOWA GROCERY INDUSTRY
ASSOCIATION,**

Appellee,

vs.

**CITY OF DES MOINES,**

Appellant.

Appeal from the Iowa District Court for Polk County, Robert L. Blink, Judge.

City appeals district court decision declaring a municipal ordinance which imposed administrative fees on liquor license and beer and wine permits illegal. **AFFIRMED.**

Mark Godwin, Des Moines, for appellant.

John F. Lorentzen of Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for appellee.

**STREIT, Justice.**

Arguments over government fees concerning liquor have swirled in a cocktail of political debate since the Whiskey Rebellion in 1794.[1] Iowa grocers complain the administrative fees being charged by Des Moines on liquor licenses are illegal. The defendant, the City of Des Moines, appeals from the district court's judgment declaring a municipal ordinance imposing administrative fees on liquor licenses and beer and wine permits illegal. The City claims the district court erred when it determined the Iowa Alcoholic Beverage Control Act conflicts with, and thereby preempts the administrative fee ordinance. Because we find the ordinance conflicts with the statutory scheme created for application fees, we affirm.

## I. Facts and Prior Proceedings

The plaintiff, the Iowa Grocery Industry Association (hereinafter "IGIA"), is a group of grocers, some of which operate grocery stores within the City of Des Moines. Pursuant to the statutory scheme provided by the Iowa Alcoholic Beverage Control Act (hereinafter "the Act"), applications for liquor licenses and beer and wine permits are filed with the local authority, which in this case is the Des Moines City Council. Iowa Code § 123.32(1) (2003). The local authority is authorized to make an initial decision whether to approve or disapprove the application. *Id.* § 123.32(2). The application, endorsed by the local authority as either approved or disapproved, is then forwarded to the Iowa Alcoholic Beverage Division of the Iowa Department of Commerce (hereinafter "Division"). *Id.* If the application is not approved by the local authority,

---

[1]In 1794, President Washington mobilized an army of approximately 15,000 to suppress an uprising of Pennsylvania farmers angered by an excise tax imposed by the federal government on whiskey. *See generally* Jason Mazzone, *The Security Constitution*, 53 UCLA L. Rev. 29, 109-112 (2005).

the Division notifies the applicant of the disapproval and informs the applicant of its opportunity to appeal the decision to the administrator of the Division. *Id.* § 123.32(5)(*a*). If the application is approved by the local authority, the administrator makes any investigation it deems necessary and then affirms, reverses, or modifies the local authority's decision. *Id.* § 123.32(5)(*b*).

The Act assigns specific application fees for liquor licenses and beer and wine permits. The local authority collects these fees. For beer permit applications, the local authority forwards a certified receipt for the fees to the Division, but retains all of the application fees for itself. *Id.* § 123.143(1). In contrast, the fees on liquor licenses and wine permit applications are not retained by the local authority. The local authority sends these fees to the Division and then receives a percentage of the fees back. *Id.* § 123.36(8). In Des Moines, the fees retained by, or remitted back, to the City are placed in the City's general fund.

In 2003, the City of Des Moines adopted an ordinance requiring an additional "administrative fee" on applications for liquor licenses and beer and wine permits. Des Moines City Ordinance § 10-54(3) (2004). Although the City is already reimbursed for its role in the application process,[2] the City passed this ordinance to cover its costs in processing and investigating the applications. The additional administrative fee for new permit applicants is a minimum of $420 for "on-premises" consumption permits (bars and restaurants) and a minimum of $320 for

---

[2]The local authority is not compensated for every type of application, but it does receive varying amounts of compensation based upon the type of application. For example, the local authority keeps all fees it collects for beer permit applications. Iowa Code § 123.143(1). For Class A, B, and C liquor licenses the local authority receives 65% of the application fee. *Id.* § 123.36(8). The State keeps all fees for temporary or seasonal licenses, Class A and B wine permits, and Class D and E liquor licenses. *See id.* §§ 123.36, .143, .179.

"off-premises" consumption permits (grocery stores and convenience stores). Unlike the state statutory license fee, the ordinance provides no mechanism to refund the administrative fee if the license application is not approved. *See id.*; Iowa Code § 123.32(5)(*a*).

The IGIA filed the present declaratory judgment action claiming the ordinance is illegal because the State regulation of liquor licensing under the Iowa Alcoholic Beverages Control Act preempts the imposition of additional fees. Before trial, IGIA and the City agreed upon a joint statement of facts, and then both filed motions for summary judgment. The court granted IGIA's motion for summary judgment, and the City filed this appeal.

## II. Standard of Review

When reviewing a district court's decision to grant summary judgment, our task is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. *Junkins v. Branstad*, 421 N.W.2d 130, 132 (Iowa 1988). In this case, the parties agree there is no dispute with respect to the material facts of the case; the disagreement centers on the interpretation of state law. Our role is to decide whether we agree with the district court's application of the law to the undisputed facts before us. Therefore, our review is for correction of errors at law. *Campbell v. Delbridge*, 670 N.W.2d 108, 110 (Iowa 2003) ("The standard of review of a district court's grant of summary judgment is for correction of errors at law.").

## III. Merits

### A. Home Rule Authority

The City argues the ordinance is valid because, under the "Home Rule Amendment," the City has the power to determine its own local

affairs and government. In essence, the City argues it can charge the fee because the Act does not explicitly limit its right to do so.

Article III, section 38A of the Iowa Constitution provides:

> Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly.
>
> The rule or proposition of law that a municipal corporation possesses and can exercise only those powers granted in express words is not a part of the law of this state.

This provision of the Iowa Constitution, known as the "Home Rule Amendment," grants municipal corporations broad authority to regulate matters of local concern. *City of Des Moines v. Gruen*, 457 N.W.2d 340, 341 (Iowa 1990). However, this authority is limited by the fact that a city's exercise of power must not "be inconsistent with the laws of the general assembly." Iowa Const. art. III, § 38A.

"A municipal ordinance is inconsistent with a law of the general assembly and, therefore, preempted by it, when the ordinance prohibits an act permitted by statute, or permits an act prohibited by a statute." *Gruen*, 457 N.W.2d at 342 (internal quotations and citations omitted). A municipal ordinance is also preempted by state law when the ordinance invades an area of law the legislature reserved to itself. *Id.* Stated another way, municipalities do not have authority to act if a particular power has been denied them by statute. *Goodell v. Humboldt County*, 575 N.W.2d 486, 492 (Iowa 1998); *see also* Sam F. Scheidler, *Implementation of Constitutional Home Rule in Iowa*, 22 Drake L. Rev. 294, 305 (1973).

The district court concluded the Act preempted the City's authority to charge the administrative fee because the fee conflicted with the

general assembly's specific directions for governance in the area of alcoholic beverage permits. After reviewing the controlling statutes, we agree with the district court.

### B.  The Iowa Alcoholic Beverages Control Act

The first section of the Iowa Alcoholic Beverages Control Act establishes that the general assembly chose to reserve to itself the power to regulate the traffic of alcoholic beverages:

> This chapter shall . . . be deemed *an exercise of the police power of the state*, for the protection of the welfare, health, peace, morals, and safety of the *people of the state*, and all its provisions shall be liberally construed for the accomplishment of that purpose. It is declared to be public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, *except as provided in this chapter.*

Iowa Code § 123.1 (emphasis added). A subsequent section defining the term "local authority" also supports the conclusion that, subject to a handful of exceptions, the general assembly reserved in itself the power to regulate Iowa's alcoholic beverage industry. Section 123.3(21) states a local authority is empowered

> to approve or deny applications for retail beer or wine permits and liquor control licenses; empowered to recommend that such permits or licenses be granted and issued by the division; and empowered to take other actions *reserved to them* by this chapter.

(Emphasis added.) More pertinent to the case at hand, the general assembly "exclusively" reserved in itself the "power to establish [liquor] licenses and [beer and wine] permits and levy taxes as imposed in [the Act]." *Id.* § 123.37.

While the general assembly reserved to itself the general authority to regulate the alcoholic beverage industry in Iowa, it also gave limited regulatory powers to local authorities. For example:

Section 123.30(2) allows the local authority to refuse to issue a license or permit for premises which do not conform to applicable local laws.

Section 123.32(3) allows the local authority to "define . . . licensed premises" for festivals, fairs and the like.

Section 123.32(4) allows the local authority to require an applicant's security personnel "to be trained and certified in security methods."

Section 123.38 allows the local authority to authorize the transfer of existing permits from one location to another, so long as the location remains within the same city or county.

Section 123.39(1) allows the local authority to suspend a license or permit "for a period not to exceed one year" or impose a civil penalty "not to exceed one thousand dollars per violation."

Section 123.39(2) allows the local authority to "suspend any retail wine or beer permit or liquor control license for a violation of any ordinance or regulation adopted by the local authority." It also allows local authorities to "adopt ordinances or regulations for the location of the premises of retail wine or beer and liquor control licensed establishments."

Most important to the present case, the general assembly gave local authorities the authority to adopt ordinances which govern "any other activities or matters which may affect the retail sale and consumption of beer, wine, and alcoholic liquor and the health, welfare and morals of the community involved." *Id.* § 123.39(2). The general assembly limited this authority to ordinances "not in conflict with" the Act and ordinances "that do not diminish the hours during which beer, wine, or alcoholic beverages may be sold or consumed at retail." *Id.* While we attempt to interpret statutes and ordinances in a manner so as to render them harmonious, *Green v. City of Cascade*, 231 N.W.2d 882, 890 (Iowa 1975), and presume municipal ordinances are valid, *Dilley v. City of Des Moines*,

247 N.W.2d 187, 190 (Iowa 1976), we simply cannot avoid the following conflicts between the Act and the ordinance.

### 1. Transfer Fees

One patent inconsistency between the statutory process set forth by the ordinance and the process set forth by the Act relates to permit transfer fees. Under the current ordinance, an existing permittee or licensee seeking to transfer the permit or license to a different location within the jurisdiction of the city is required to pay an administrative fee ranging from $215 to $315. This fee is subject to change by resolution of the City Council.

In contrast, Iowa Code section 123.38 states:

> The administrator [of the Iowa Alcoholic Beverages Division] may by rule *establish* a *uniform* transfer fee to be assessed *by all local authorities* upon licensees or permittees to cover the administrative costs of such transfers, such fee to be retained by the local authority involved.

(Emphasis added.) The Act does not give local authorities the power to establish a transfer fee. Instead the general assembly has, under its exclusive right to "establish licenses and [alcoholic beverage] permits," assigned the power to establish transfer fees to the administrator. The City usurps this power by establishing its own transfer fees.

In addition, the City's mechanism for setting the amount of the transfer fee does not assure uniformity within the state. Under the ordinance, the City Council can set its own fees for transfer requests without any regard for a fee established by the administrator.

Beyond the irreconcilable conflict pertaining to transfer fees, we also find inherent conflicts between the fee collection procedures established in the Act and those set forth in the ordinance.

### 2. Compliance with Existing Statutory Procedure

Iowa Code section 364.6 states a city must "substantially comply with a procedure established by a state law for exercising a city power." *See also* Iowa Code § 331.301(5) (stating same requirement for counties). For the reasons discussed below, we find the application of the disputed ordinance results in a procedure which does not substantially comply with, and therefore conflicts with the procedures established by state law.

### i. Uniformity

The size of the statutory application fee for a particular applicant is based upon a myriad of factors. The application fee varies according to whether the applicant is located within corporate city limits, the type of applicant, the population of the city, the type of alcoholic beverage, and whether the alcoholic beverages are sold on Sundays. *See, e.g., id.* §§ 123.36, .134, .179. The only other fee addressed by the legislature pertaining to alcoholic beverage permits is the license transfer fee. As discussed above, only the Division administrator has the power to set this fee, and the administrator must set this fee so that it is "uniform" for all local authorities. *Id.* § 123.38.

One effect of a uniform statutory application fee system is that it keeps local authorities from using license or permit application fees to curtail liquor establishments within their jurisdiction. Without a uniform application fee system, a local authority could charge a large application fee to discourage new liquor permit applicants or to discourage renewals of existing permits. For example, under the guidelines set forth by the general assembly, an applicant planning to open a liquor establishment in the greater Des Moines area would pay the same application fee in the City of Des Moines or in the nearby city of

Urbandale.  The cost of applying for such a permit (and the cost of reapplying for subsequent permits) would not factor into the proprietor's decision of where to locate its business.  However, if local authorities were allowed to set their own license application fees, then one city could raise its application fees and push liquor establishments into a nearby jurisdiction.

The imposition of additional "administrative fees" would circumvent the established procedure.  The benefit of a standardized application fee would be lost because each local authority would be able to discourage the proliferation of liquor establishments based on administrative fees, rather than application fees.  For this reason we find the disputed ordinance disturbs, and does not substantially comply with, the uniformity so meticulously established by the Act.

### ii.  Existing Repayment Mechanism

Normally, a municipal corporation can, as a home rule entity, impose license fees, permit fees, or franchise fees to cover the cost of "inspecting, licensing, supervising, or otherwise regulating" activities related to the exercise of its police power.  *Home Builders Ass'n v. City of West Des Moines*, 644 N.W.2d 339, 347 (Iowa 2002).  However, in the present case, an "additional administrative fee" is not appropriate because the City already receives compensation for these costs.  Not only is the City already compensated for its role in the application process, but the City, with its large population, is compensated more for its application review process than other smaller cities or rural counties. The fact that the statutory fee schedule assures local authorities in larger cities larger application fees than local authorities in smaller cities or rural counties leads us to the conclusion that the general assembly

appreciated and accounted for any additional costs involved in investigating and processing applications in larger cities.[3]

### iii. Additional Requirement

By adding extra fees, the City has increased its role in the licensing system—if the applicant does not pay the City its additional administrative fee, the City will not forward the application on to the Division. This extra hurdle violates the application procedure established by the Act. *See generally Richards v. City of Pontiac*, 9 N.W.2d 885, 888 (Mich. 1943) (finding conflict where a city imposed a licensing fee for trailer camps when the State had already entered the field and imposed a similar licensing fee).

The City argues this extra hurdle does not conflict with the Act. The City contends the present ordinance is analogous to an ordinance which survived a preemption challenge in the court of appeals. Drawing on language from *BeeRite Tire Disposal/Recycling, Inc. v. City of Rhodes*, 646 N.W.2d 857, 860 (Iowa Ct. App. 2002), the City claims its administrative fee further promotes the underlying policy of the Act "with greater force" and "merely" increased "the details of the existing regulation."

In *BeeRite*, the city of Rhodes passed an ordinance regulating the disposal of old tires. 646 N.W.2d at 858. This ordinance imposed, among other things, a $100 annual permit fee payable to the city on top of the existing $850 state fee payable to the Department of Natural Resources. *Id.* The court of appeals compared the legislative agenda to "regulate the regulation of tire disposal" with our decision in *Goodell v.*

---

[3]For example, the application fee for a Class B liquor license in a city of 10,000 or more people is $1300. The fee for the same permit in a city with a population of 3000 or less is only $800. Iowa Code § 123.36(3). The local authority receives 65% of this application fee. *Id.* § 123.36(8).

*Humboldt County,* where we considered the legislative agenda regarding livestock confinement. *Id.* at 860-61 (citing *Goodell,* 575 N.W.2d at 503-07). Noting there was a "clear legislative purpose to issue regulations intending to limit local over-regulation in the area of livestock confinement," the court of appeals concluded there was no similar legislative agenda to regulate the regulation of tire disposal. *Id.* at 861. Unlike the livestock confinement regulations in *Goodell,* there was "no statutory scheme which would be either bypassed, contradicted, or overridden by the City of Rhodes's tire disposal regulations." *Id.* at 860. Because there was less need for *uniform* state regulations for tire disposal than there was for livestock confinement waste, the court of appeals concluded the Rhodes ordinance did not "unduly modify the tire disposal statutory scheme established by the State" and did not "stand in opposition to regulations promulgated by the Iowa Legislature." *See id.* at 860-61.

Without determining the validity of the distinction made by the court of appeals in *BeeRite,* we are confident the same conclusion cannot be drawn here. The general assembly's footprint covers the area of alcoholic beverage permits. The general assembly limits the ability of local authorities to regulate alcoholic beverages and "exclusively" reserves in itself the power to establish beer permits, wine permits, and liquor licenses. *See* Iowa Code §§ 123.1, .3(21), .37. In addition, the City's administrative fee disrupts the uniformity in the statutory scheme.

The ordinance does more than merely increase the details of regulation.

### iv. Accountability

The Act outlines procedures for local authorities to collect the "necessary fee" prescribed by statute and to either forward that fee on to

the alcoholic beverage division or to keep the fee and submit a receipt to the Division. *See id.* § 123.32(2). Either way, the local authority is required to report any funds received with the application. *See id.* §§ 123.32(2), .36(8), .143. Under the Des Moines ordinance, the City does not have to account to the Division for the total amount collected for the application. It only accounts for the fees collected under the statutory guidelines. This violates the established procedure and frustrates the general assembly's intent to monitor the flow of funds from license/permit applicants to local authorities.[4]

## IV. Conclusion

The general assembly has established a comprehensive and uniform procedure for controlling the fees surrounding the issuance and transfer of alcoholic beverage permits or licenses. This procedure clearly defines the local authority's role in the application process and compensates the local authority for its responsibilities. The Des Moines ordinance conflicts with this statutory scheme. We therefore affirm the district court's decision to declare the ordinance invalid.

**AFFIRMED.**

---

[4]Iowa Code section 123.18 expressly prohibits a "person responsible for the administration or enforcement of this chapter" from accepting or soliciting donations, gratuities, political advertising, gifts, or other favors from any applicant.