# IN THE COURT OF APPEALS OF IOWA

No. 22-0473
Filed February 8, 2023

**LIME LOUNGE, LLC,**
        Plaintiff-Appellant,

**vs.**

**CITY OF DES MOINES, IOWA,**
        Defendant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Dustria A. Relph, Judge.

A business appeals a district court's denial of its motion for declaratory judgment, asserting an irreconcilable conflict between state law and a local ordinance. **AFFIRMED.**

Cornelius S. Qualley and George Qualley IV of Qualley Law, P.L.C., Des Moines, for appellant.

John O. Haraldson, Assistant City Attorney for City of Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Lime Lounge, LLC (Lime Lounge) appeals a district court ruling that denied its request for a permanent injunction and dissolved a temporary injunction that restrained the City of Des Moines (Des Moines) from seeking to revoke Lime Lounge's state liquor license. Lime Lounge contends the basis for the revocation—Lime Lounge's failure to maintain their conditional use permit (CUP) as required by Des Moines's municipal code—is preempted by state law. Lime Lounge also claims the ordinance violates the equal protection clause of the state and federal constitutions. Further, they assert the CUP constitutes illegal spot zoning. We conclude the city's ordinance related to the CUP is not preempted by state law. Additionally, the ordinance does not violate the equal protection clause, nor does it amount to illegal spot zoning. Accordingly, we affirm.

I.      **Background Facts & Proceedings**

Lime Lounge owns and operates a bar in the East Village of Des Moines, a mixed use neighborhood that contains commercial and residential buildings. The bar has operated since 2011, although not always in the current location.

Generally, to sell liquor or other alcoholic beverages in this state, an establishment must comply with the provisions of Iowa Code chapter 123 (2019). In particular, the establishment must submit a liquor control license application to the state Alcoholic Beverages Division (ABD). *See* Iowa Code §§ 123.2, .31. The code sets out the applicable fees for the applications. *See id.* § 123.36. Some of the fees, depending on the type of license, are remitted to the local authority—the city—in which the licensee operates. *Id.* § 123.36(8). Prior to the ABD receiving the application, however, the application must be filed with the local authority,

which is directed to either approve or disapprove of the application. *See id.* § 123.32(2). The application is then forwarded to the ABD. *See id.* If approved by the local authority, the ABD performs the necessary investigation of the establishment and either affirms, modifies, or reverses the local authority's decision. *See id.* § 123.32(6)(b). If the local authority disapproves of the application, the applicant has the ability to appeal the decision to the administrator of the ABD. *See id.* § 123.32(6)(a).

To operate an establishment selling alcoholic beverages in Des Moines, an additional step is required. Pursuant to Des Moines Municipal Code section 134-954, an establishment may be required to obtain a CUP in order to be approved by the city's Zoning Board of Adjustment (ZBOA). That section places different requirements on establishments based on the type of business they are engaged in—i.e., whether they are restaurants, bars, gas stations, etc.—the zoning district they are in, and the type of alcoholic beverages they serve. Des Moines, Iowa, Municipal Code § 134-954 (2019). A CUP is only granted if the business meets certain requirements, including maintaining trash receptacles, compliance with noise ordinances, and avoiding other issues that might constitute a nuisance. *Id.* § 134-954(b), (c). The CUP requires an application—distinct from the state liquor license control application—which is either approved or rejected by the ZBOA. It also requires payment of certain fees. The city will not consider a liquor control license application until the CUP, if necessary, is approved.

Lime Lounge obtained a CUP and had their liquor control license approved in 2011. In 2015, the ZBOA amended Lime Lounge's CUP after multiple noise complaints. The ZBOA revoked Lime Lounge's CUP in March 2016. Lime Lounge

challenged the revocation.  The revocation was upheld on appeal.  *Lime Lounge, LLC v. Zoning Bd. of Adjustment of Des Moines*, No. 18-0155, 2019 WL 480197, at *11 (Iowa Ct. App. Feb. 6, 2019).

On May 14, 2019, Des Moines filed a complaint with the ABD to revoke Lime Lounge's state liquor license on the basis of the establishment's failure to comply with local ordinances.  *See* Iowa Code § 123.30(2).  Lime Lounge filed a motion for declaratory judgment on June 3 and a motion for temporary injunction on July 29.  The temporary injunction was granted October 4.  Des Moines filed a motion to deny a permanent injunction and dismiss the suit on November 4, 2021.  A bench trial was held.  On January 20, 2022, the district court dissolved the temporary injunction, denied a permanent injunction, and dismissed the suit.  Lime Lounge filed a motion to reconsider, which was denied.  Lime Lounge now appeals.[1]

## II.     Standard of Review

Whether Des Moines's municipal code is preempted by state law or is illegal spot zoning are questions of law.  As such, we review the court's ruling for correction of errors of law.  *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 155 (Iowa 2004).  We review constitutional challenges de novo.  *State v. Mitchell*, 757 N.W.2d 431, 434 (Iowa 2008).

## III.    Is the Municipal Code Preempted by Chapter 123?

Lime Lounge contends Des Moines Municipal Code section 134-954 and the accompanying CUP requirement is preempted by Iowa Code chapter 123.

---

[1] Lime Lounge also sought a motion to stay, which was denied by the supreme court on August 2, 2022.

They claim the ordinance is preempted because it requires an additional permit and fees in order to obtain a state liquor license, which is in conflict with Iowa Code section 123.37.  Lime Lounge also asserts the ordinance usurps the State's police power, *see* Iowa Code section 123.1, and violates the appeal procedure as established in state code.  *See* Iowa Code §§ 123.32; .39.

Under article III, section 38A of the Iowa Constitution, municipalities generally have the authority to regulate their own affairs so long as their actions are not inconsistent with state law.  The provision is referred to as "home rule." *Davenport v. Seymour*, 755 N.W.2d 533, 537-38 (Iowa 2008).  When considering whether a local ordinance conflicts with state law, we utilize the doctrine of preemption.  *Id.* at 538.  "The general thrust of the preemption doctrine in the context of local affairs is that municipalities cannot act if the legislature has directed otherwise.  When exercised, legislative power trumps the power of local authorities."  *Id.*  While there are generally three types of preemption—express, conflict, and field—Lime Lounge explicitly limits their claim to express preemption. *See id.* at 538-39.  Express preemption "applies where the legislature has specifically prohibited local action in a given area."  *Id.* at 538.  We look to the "specific language used by the legislature" to determine whether express preemption applies.  *Id.*

We first examine Des Moines's requirement that certain establishments obtain a CUP and pay additional fees.  Iowa Code section 123.37(1) provides, "The power to establish licenses and permits and levy taxes as imposed in this chapter is vested exclusively with the state.  Unless specifically provided, a local authority shall not require the obtaining of a special license or permit for the sale of alcoholic

beverages at any establishment . . . ." Lime Lounge suggests that provision expressly preempts the city's actions—only the State can impose permits and taxes.

We disagree. As a starting point, we do not believe section 123.37 applies to the city's actions. Municipal Code section 134-954 is expressly related to "[t]he *use of land* in all districts for the sale of alcoholic liquor, wine and beer." (Emphasis added). As the district court noted, "The ordinance does not require a permit for the sale of alcohol, it requires a permit to *use certain premises* for the sale of alcohol." It's a land-use regulation, not a regulation on the sale of alcohol. Thus, the requirement to obtain a CUP is not a permit requirement "for the sale of alcoholic beverages."

Viewing the rest of chapter 123 supports this conclusion. *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) (explaining that we read statutory provisions in context rather than in isolation). When we do so, it is apparent the legislature provides Des Moines the authority to impose regulations so long as they do not impose taxes and permits on liquor licenses themselves or restrict the hours during which alcohol may be sold. For instance, section 123.39(2) provides:

> *Local authorities may adopt ordinances or regulations for the location of the premises of liquor control licensed* and retail wine or beer permitted establishments *and local authorities may adopt ordinances*, not in conflict with this chapter and that do not diminish the hours during which alcoholic beverages may be sold or consumed at retail, *governing any other activities or matters which may affect the retail sale and consumption of alcoholic beverages and the health, welfare and morals of the community involved.*

(Emphasis added.) That section expressly provides cities with the authority to regulate the physical premises of an establishment licensed by the State, and it

provides cities with the authority to adopt regulations related to "activities or matters" that affect the sale of alcohol so long as the regulations protect the "health, welfare and morals of the community." Iowa Code § 123.37(2). Municipal Code section 134-954 includes provisions related to trash collection, avoiding congestion and loitering, the location of doors facing certain streets, and noise limits. Preventing unsanitary conditions, ensuring the safety of patrons by limiting large groups and ensuring access to certain streets, and limiting unnecessary noise all relate to the health, welfare, and morals of the community. Thus, rather than being preempted by code, the legislature expressly provided cities with the authority to impose these types of regulations.

Lime Lounge contends this case is controlled by *Iowa Grocery Industry Association v. City of Des Moines*, 712 N.W.2d 675 (Iowa 2006). That case involved a Des Moines ordinance that required an administrative fee on applications for state liquor licenses separate from the fee imposed by state law. *Iowa Grocery*, 712 N.W.2d at 677-78. Our supreme court found the ordinance was preempted by Iowa Code chapter 123. In particular, the court noted the ordinance conflicted with the existing fee structure and repayment system, undermined uniformity in the license applications process, and imposed additional requirements on applications. *Id.* at 680-82.

While some of the policy rationale behind *Iowa Grocery* could apply to this case, we find the case inapposite. Fundamentally, the ordinances are distinct. In *Iowa Grocery*, the ordinance imposed a fee *on license applications. Id.* at 681. As such, the city administrative fee was directly preempted by chapter 123's provisions related to the application process and the imposition of fees for

applications. *Id.* Here, the CUP and accompanying fees are separate from the application for the state license. As explained above, the ordinance and permits regulate the use of premises selling alcohol rather than imposing regulations on the sale itself. Thus, whereas the city was expressly prohibited from imposing additional fees on liquor license applications in *Iowa Grocery*, here the city is acting under the authority conferred to it by Iowa Code section 123.39.

Lime Lounge's preemption claim involving the State's police powers is similarly without merit. It is true that section 123.1 notes that the chapter "shall be deemed an exercise of the police power of the state." However, section 123.39 permits cities to exercise their own power to regulate the health, welfare, and morals of the community. And section 123.30(2) requires establishments to comply with local ordinances. It would make little sense for the legislature to prohibit cities from imposing regulations while also requiring establishments comply with them.

We also find Des Moines's municipal code is not preempted by the appeal procedure of chapter 123. Lime Lounge essentially claims that once the ZBOA revokes a CUP, the only matter before the ABD is whether the licensee is complying with local ordinances that require a CUP. As a result, Lime Lounge asserts it is impossible to challenge the revocation of the CUP to the ABD. But the fact that the CUP revocation has collateral consequences does not undermine the appeal process found in chapter 123. The chapter clearly contemplates that non-compliance with local ordinances can be grounds for license revocation. *See* Iowa Code § 123.30(2). Any appeal to the ABD concerning non-compliance with a local ordinance would be focused on the act of non-compliance, not the validity of the

local ordinance. And we note that Lime Lounge already utilized the judicial process to challenge the validity of its CUP revocation. *See Lime Lounge*, 2019 WL 480197, at *5-6.

Des Moines's CUP requirement and accompanying fee is not preempted by the Iowa Code. As such, the city had the authority, pursuant to the home rule doctrine and Iowa Code section 123.39, to regulate the premises of establishments selling alcohol. We reject Lime Lounge's preemption claim.

## IV. Equal Protection Clause

Lime Lounge asserts Municipal Code section 134-954(a) violates the equal protection clause of the Iowa and United States constitutions.[2] In particular, they allege the code allows the ZBOA to impose different restrictions on similar businesses that are arbitrary and capricious. The conditions imposed by Municipal Code section 134-954(a), which can include obtaining a CUP, requiring a certain amount of sales be obtained via food receipts, and imposing distance requirements to certain establishments like schools, are based on the type of business,[3] the zoning district the business occupies, and the type of liquor license it holds. Lime Lounge appears to only contest the portion of the code that requires certain businesses, but not others, to obtain a CUP.

---

[2] "[W]hile we will generally apply the same analysis to federal and state equal protection claims, this court has not foreclosed the possibility that there may be situations where differences in scope, import, or purpose of the two provisions warrant divergent analyses." *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 5 (Iowa 2004). Neither party suggests we should treat Lime Lounge's state and federal equal protection claims separately. As such, we analyze the claims together.

[3] Municipal Code section 134-954(a) establishes different requirements for "food sales establishments and retail sales establishments," gas stations or convenience stores, liquor stores, tobacco stores, restaurants, and taverns.

"[T]he Equal Protection clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Fitzgerald*, 675 N.W.2d at 7 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "Whether this ideal has been met in the context of economic legislation is determined through application of the rational basis test." *Id.* "Under this test, we must determine whether the classification is 'rationally related to a legitimate governmental purpose.'" *King v. State*, 818 N.W.2d 1, 27 (Iowa 2012) (citation omitted). "The classification is valid 'unless the relationship between the classification and the purpose behind it is so weak the classification must be viewed as arbitrary or capricious.'" *Id.* at 27-28 (citation omitted). Statutes carry "a strong presumption of constitutionality," and it is the plaintiff's burden to negate "every reasonable basis that might support the disparate treatment." *Fitzgerald*, 675 N.W.2d at 8 (citation omitted)

Lime Lounge makes two distinct claims here. First, they allege the varied requirements—particularly the necessity of obtaining a CUP and the fees necessary to do so—imposed on different establishments such as restaurants, bars, and retail establishments are arbitrary. *See* Des Moines, Iowa, Municipal Code § 134-954(a). Second, they allege the municipal ordinance allows the ZBOA to "impose virtually any condition which it can contemplate—and, more onerously—on an individualized basis." *See id.* § 134-954(c).

The city's classification system for various establishments selling alcoholic beverages does not violate Lime Lounge's equal protection rights. The city has a legitimate purpose in ensuring the health, welfare, and safety of the community. In relation to businesses that serve alcohol, cities have an interest in regulating

noise levels, maintaining clean public spaces, and ensuring the area is safe for patrons and other citizens. The distinction drawn by Des Moines's Municipal Code between bars, restaurants, and other retail establishments is rationally related to that purpose. As the city points out, bars tend to operate later in the evening than restaurants, be louder—both because of music and patrons—and have increased law enforcement involvement. This is particularly true when compared to retail establishments that sell alcohol that is consumed elsewhere. Requiring additional permitting—which delineates noise, lighting, and sanitary requirements—for certain businesses that are more likely to exhibit additional nuisance behaviors is rationally related to protecting the community.

We also reject Lime Lounge's claim that the ordinance allows the ZBOA unfettered discretion in imposing permitting restrictions. Contrary to Lime Lounge's contentions, the ZBOA is limited to imposing conditions "as may be reasonably required by the board to ensure that the criteria of subsection (b), above, are satisfied."[4] *Id.* Subsection (b) mandates that (1) the business's "location, design, construction and operation of the particular use adequately safeguards the health, safety and general welfare of persons" in the surrounding area, (2) the business is separate enough from other structures to prevent noise harming the adjoining areas, (3) the business does "not unduly increase congestion on the streets" of the area, and (4) the business does not constitute a nuisance. Thus, the board is limited to imposing individualized restrictions on

---

[4] The business must also comply with the "general conditions" found in Municipal Code section 134-954(c), which involves adequate lighting, compliance with noise ordinances, limiting loitering, and adequate trash removal.

businesses in only a handful of circumstances, all of which relate to minimizing the harmful impacts of the business on the community.

We acknowledge that certain individualized zoning restrictions could conceivably violate the equal protection clause. This is not such a case. As explained above, the city has an interest in protecting the community's health and welfare. The East Village of Des Moines is a mixed-use neighborhood, containing both commercial and residential buildings. Tailoring certain zoning restrictions related to noise, congestion, and other nuisance behavior to the specific circumstances of the area is rationally related to promoting the community's welfare.

## V. Spot Zoning

Lime Lounge asserts Municipal Code section 134-954 amounts to illegal spot zoning. "Spot zoning is the creation of a small island of property with restrictions on its use different from those imposed on surrounding property." *Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 45 (Iowa 2016) (quoting *Perkins v. Bd. of Supervisors of Madison Cnty*, 636 N.W.2d 58, 67 (Iowa 2001)). However, not all spot zoning is illegal. *Id.* We use a three-part test to determine if spot zoning is valid:

> (1) whether the new zoning is germane to an object within the police power; (2) whether there is a reasonable basis for making a distinction between the spot zoned land and the surrounding property; and (3) whether the rezoning is consistent with the comprehensive plan.

*Id.* at 46 (citation omitted). "[T]here must be substantial and reasonable grounds or basis for the discrimination when one lot or tract is singled out." *Id.* (citation omitted).

First, we agree with the district court that the municipal code does not amount to spot zoning. Lime Lounge provided four examples of conditional use permits for neighboring properties that have minor variations in noise restrictions. However, these differences are merely semantic. Three of those properties, including Lime Lounge's, are restricted to non-amplified sound that cannot exceed what would be "considered background auditory in nature." Only one property is permitted to use amplified sound on certain occasions. Contrary to Lime Lounge's assertion, their property is not "a small island" with different restrictions than the rest.

Even if we were to consider this spot zoning, it would not be illegal. As noted above, the noise restrictions and other directives limiting nuisance behavior fall squarely within the city's police power. Furthermore, in the mixed-use community, utilizing permits with varied directives allows the city to pursue the dual goals of maintaining an entertainment district while also limiting the disturbances to the residential buildings in the area. Finally, the zoning in this case is consistent with that plan—establishments are given conditions that are relevant to limiting nuisance behavior for the surrounding buildings. Des Moines's zoning does not constitute illegal spot zoning.

**VI.  Conclusion**

We find Des Moines Municipal Code section 134-954 is not preempted by state code.  Further, the municipal code does not violate Lime Lounge's equal protection rights, nor does it constitute illegal spot zoning.  The district court properly dissolved the temporary injunction and rejected Lime Lounge's request for a permanent injunction.

**AFFIRMED.**