# IN THE SUPREME COURT OF IOWA

No. 22–0473

Submitted February 20, 2024—Filed March 22, 2024

**LIME LOUNGE, LLC,**

Appellant,

vs.

**CITY OF DES MOINES, IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert B. Hanson (temporary injunction) and Dustria A. Relph (trial), Judges.

Bar owner seeks further review of court of appeals decision that affirmed district court judgment dismissing challenges to city ordinance. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. Christensen, C.J., takes no part in the consideration or decision of this case.

Cornelius S. Qualley (argued) and George Qualley IV of Qualley, P.L.C., Des Moines, for appellant.

John O. Haraldson (argued), Assistant City Attorney, Des Moines, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether the district court correctly rejected challenges to a City of Des Moines ordinance governing conditional use permits (CUPs) for bars. After noise complaints, the City revoked the CUP for a bar in the East Village, which was upheld in a prior appeal. The bar now challenges the ordinance, arguing it is preempted by Iowa Code chapter 123 as interpreted in *Iowa Grocery Industry Ass'n v. City of Des Moines*, 712 N.W.2d 675 (Iowa 2006), and violates equal protection and spot zoning prohibitions. The bar filed a motion for a temporary injunction, which the City resisted. The district court granted a temporary injunction allowing the bar to remain open. Several years later, a different judge—after a trial on the merits—lifted the injunction and dismissed the suit. The bar appealed, and we transferred the case to the court of appeals, which affirmed the dismissal. We granted the bar's application for further review.

On our review, we determine the bar's challenges to the CUP ordinance lack merit. Iowa Code chapter 123 allows municipalities to regulate bars through zoning, noise restrictions, and other health and safety measures within their local police powers. The Des Moines CUP ordinance is not preempted by state law, and it easily survives the bar's constitutional challenge under rational basis review. Nor did the City engage in illegal spot zoning. For the reasons further explained below, we affirm the decision of the court of appeals and the district court judgment dismissing the bar's challenge to the ordinance.

## I. Background Facts and Proceedings.

Lime Lounge, LLC owns and operates a bar at 435 East Grand Avenue in Des Moines's East Village neighborhood. In 2011, Lime Lounge obtained a CUP from the City of Des Moines Zoning Board of Adjustment (ZBOA)—pursuant to Des Moines Municipal Code § 134-954—to sell wine, liquor, and beer; the Iowa

Alcoholic Beverages Division (ABD) of the Iowa Department of Revenue subsequently issued Lime Lounge a liquor control license.

**A. The Process to Obtain a Liquor License.** "Alcoholic beverage licensing in Iowa is a joint effort of the applicant, local authority (city or county), and the Iowa Alcoholic Beverages Division (ABD)." Iowa Alcoholic Beverages Div., *Licensing Requirements*, https://abd.iowa.gov/licensing/licensing-requirements [https://perma.cc/45MH-AZDR]. Enacted in 1934, the "Iowa Liquor Control Act," now entitled the "Iowa Alcoholic Beverage Control Act" and codified as amended at Iowa Code chapter 123, provides the statutory regime for obtaining a liquor license. 1934 Iowa Acts ch. 24 (codified at Iowa Code ch. 93-F1 (Iowa 1935)). "[S]ubject to a handful of exceptions, the general assembly reserved in itself the power to regulate Iowa's alcoholic beverage industry." *Iowa Grocery*, 712 N.W.2d at 679. Specifically, Iowa Code section 123.37(1) (2019) grants the State the exclusive authority to establish alcohol licenses and permits:

> The power to establish licenses and permits and levy taxes as imposed in this chapter is vested exclusively with the state. Unless specifically provided, a local authority shall not require the obtaining of a special license or permit for the sale of alcoholic beverages at any establishment.

A person seeking a liquor license must complete an electronic application, including the information specified in Iowa Code section 123.31, and file the application with the appropriate local authority—the "city council if the premises for which the license or permit is sought are located within the corporate limits of a city, or with the board of supervisors if the premises for which the license or permit is sought are located outside the corporate limits of a city." *Id.* § 123.32(1)(*a*). The applicant must also meet several requirements found in section 123.30: they must be "of good moral character"; consent to allowing certain government employees "to enter upon areas of the premises where

alcoholic beverages are stored, served, or sold, without a warrant during business hours of the licensee or permittee to inspect for violations of this chapter or ordinances and regulations that cities and boards of supervisors may adopt"; and possess premises that "conform to all applicable laws, ordinances, resolutions, and health and fire regulations." *Id.* § 123.30(1)(*a*)–(*b*), (2).

The local authority then decides to either "approve or disapprove the issuance of a liquor control license, retail wine permit, or retail beer permit." *Id.* § 123.32(2). The local authority "shall endorse its approval or disapproval on the application and shall forward the application with the necessary fee and bond, if required, to the [ABD]." *Id.*

Once the application is received by the ABD, if the local authority disapproved the application, "the administrator shall notify the applicant that the applicant may appeal the disapproval of the application to the administrator." *Id.* § 123.32(6)(*a*). The application, fee, and bond are also returned to the applicant. *Id.* If the local authority approved the application, the administrator shall conduct any investigation it "deems necessary to determine that the applicant complies with all requirements for holding a license or permit." *Id.* § 123.32(6)(*b*). "The administrator may affirm, reverse, or modify the proposed decision to approve or disapprove the application for the license or permit." *Id.*

Chapter 123 also provides a fee structure for the application, which we summarized in *Iowa Grocery*:

> The Act assigns specific application fees for liquor licenses and beer and wine permits. The local authority collects these fees. For beer permit applications, the local authority forwards a certified receipt for the fees to the Division, but retains all of the application fees for itself. [Iowa Code] § 123.143(1). In contrast, the fees on liquor licenses and wine permit applications are not retained by the local authority. The local authority sends these fees to the Division and then receives a percentage of the fees back. *Id.* § 123.36(8). In Des Moines, the fees retained by, or remitted back, to the City are placed in the City's general fund.

712 N.W.2d at 677.

**B. The City's Zoning Requirements.** Iowa Code chapter 123 expressly allows local control over zoning, health, and welfare matters. Iowa Code section 123.39(2) provides:

> Local authorities may suspend any liquor control license or retail wine or beer permit for a violation of any ordinance or regulation adopted by the local authority. Local authorities may adopt ordinances or regulations for the location of the premises of liquor control licensed and retail wine or beer permitted establishments and local authorities may adopt ordinances, not in conflict with this chapter and that do not diminish the hours during which alcoholic beverages may be sold or consumed at retail, governing any other activities or matters which may affect the retail sale and consumption of alcoholic beverages and the health, welfare and morals of the community involved.

The City enacted such an ordinance, Des Moines Municipal Code § 134-954, entitled "Selling of liquor, wine and beer," which governs "[t]he use of land in all districts for the sale of alcoholic liquor, wine[,] and beer." Des Moines, Iowa, Mun. Code § 134-954 (2019). Subsection (a) provides a table listing where the sale of alcohol may take place and states that "[t]he sale of alcoholic liquor, wine and beer is permitted only in the zoning districts and subject to the conditions applicable to the business identified in the table." *Id.* § 134-954(a).

Subsection (b) states that "[a] conditional use permit is required for the use of a premises for the sale of alcoholic liquor, wine[,] or beer, under the circumstances identified in subsection (a), above." *Id.* § 134-954(b). The Des Moines ZBOA grants the CUPs and can impose "reasonable conditions" in them. *Id.* The CUP is also subject to "special conditions" found in subsection (c), such as requiring an illuminated parking area, complying with noise ordinances, and placing litter and trash receptacles inside and outside the establishment. *Id.* § 134-954(c). A CUP is generally required for liquor stores, tobacco stores,

taverns and nightclubs, and limited food and retail sales establishments. *Id.* § 134-954(a), (b).

The ZBOA regulates the process to obtain a CUP. Persons seeking a CUP first set up a preapplication conference with "staff representing various City departments." Next, they submit an application to the City's Permit and Development Center. The application must have the required application fee attached—$300 for a CUP. If the application is approved by the City staff, the applicant then appears at the ZBOA's public hearing. Following the hearing, the ZBOA prepares a decision granting or denying the CUP. The City will not approve a liquor license application until the applicant obtains the CUP.

**C. Lime Lounge's CUP and Application Process.** Lime Lounge's CUP was subject to conditions set by the ZBOA, such as noise levels and trash collection. Lime Lounge operated the business for several years without challenge.

But in 2015, Lime Lounge received a notice from the zoning enforcement officer outlining complaints received by the City regarding noise from Lime Lounge's patio. The notice stated that "the use of outside speakers without a sound permit constitutes a pattern and practice of violating the terms and conditions of the [ZBOA's] decision and order," and "the levels and disturbance to neighbors constitutes a nuisance." *Lime Lounge, LLC v. Zoning Bd. of Adjustment*, No. 18–0155, 2019 WL 480197, at *1 (Iowa Ct. App. Feb. 6, 2019).

The ZBOA reconsidered Lime Lounge's CUP at its public meeting in August 2015. After the meeting, Lime Lounge's CUP was modified to require the noise levels to "be in accordance with a type 'E' sound permit." *Id.* at *2. Lime Lounge subsequently obtained a type "E" sound permit.

A month later, Lime Lounge received another notice from the zoning enforcement officer. But no action was taken against Lime Lounge. Then, in February 2016, Lime Lounge received yet another notice, stating that its noise

levels exceeded the level allowed under a type "E" sound permit, constituting a nuisance. The Des Moines Police Department recorded the noise emanating from Lime Lounge's premises and, on one occasion, noted that "the bass from the sound system was so loud it vibrated [the] car windows." *Id.* A citizen complaint stated that "the bass sound waves created air vibrations so annoying the occupants of a residential structure were forced to abandon their bedroom." *Id.* at *3. A public meeting was held one month later. The ZBOA was presented with "exhibits, complaints and comments offered by neighbors and police officers, and arguments by the parties" *Id.* at *4 (footnote omitted).

The ZBOA "voted to revoke Lime Lounge's CUP." *Id.* Lime Lounge petitioned for a writ of certiorari in district court challenging the revocation of its CUP. "The district court found no illegality in the [ZBOA's] action and annulled the writ . . . ." *Id.* The court of appeals affirmed in February of 2019, *see id.*, and we denied further review.

In May, the City filed a complaint with the ABD seeking to revoke Lime Lounge's liquor license pursuant to Iowa Code section 123.39 because Lime Lounge did not meet the city's "zoning ordinance," which requires a valid CUP. In response, Lime Lounge filed this declaratory judgment action in district court, alleging that the City's CUP requirement runs "counter to the regulatory scheme enacted by the Iowa Legislature governing distribution of liquor licenses" and is preempted by state statute and unenforceable against Lime Lounge. The City filed its answer, without alleging issue preclusion or claim preclusion defenses based on the prior judgment affirmed by the court of appeals in 2019. Lime Lounge moved for a temporary injunction prohibiting the City from taking any action to revoke its liquor license. The City resisted the motion.

The district court granted a temporary injunction on October 4, stating that (1) Lime Lounge was "likely to suffer irreparable harm and ha[d] no adequate

legal remedy," (2) Lime Lounge had a "substantial chance of succeeding on the merits" as the CUP requirement—"taken at face value"—"could very well be interpreted as an additional permit in contravention of the explicit language of the statute [(Iowa Code section 123.37(1))] . . . infringing on the exclusive province of the State," and (3) "the potential harm to Lime's interests . . . far outweigh the potential harm to the City's interests if said motion was granted." The State sought an interlocutory appeal, which we denied. The temporary injunction remained in place for over two and a half years while Lime Lounge continued operating.

A bench trial before a different judge was set for November 11, 2021. Two weeks before trial, the City filed a motion to deny a permanent injunction and dismiss Lime Lounge's suit. On November 4, Lime Lounge filed a resistance and a motion to strike the City's motion. The trial was held one week later.

The district court—in a January 20, 2022 ruling—dissolved the temporary injunction, denied a permanent injunction, and dismissed Lime Lounge's declaratory judgment action with prejudice. The district court ruled Iowa Code section 123 does not preempt the City's ordinance that validly "regulate[s] the premises of liquor control licensed establishments in Des Moines" and is designed to ensure that "premises where alcoholic beverages [are] served are 'safe and proper.' " The district court also determined that the ordinance did not violate the Equal Protection Clauses of the United States and Iowa Constitutions, finding that the requirement to obtain a CUP by select businesses that sell alcohol was not arbitrary or capricious. Finally, the district court concluded that Lime Lounge failed to prove illegal spot zoning, as the different requirements placed in each CUP were "consistent with the comprehensive plan of the neighborhood." Lime Lounge filed a motion to reconsider, which the district court denied.

Lime Lounge appealed, arguing five overlapping issues: (1) Iowa Code chapter 123 preempts the CUP requirement in Des Moines Municipal Code § 134-954 because the ordinance requires an additional permit and fee to apply for a liquor license inconsistent with Iowa Code section 123.37; (2) the ordinance usurps the state's police power by giving the ZBOA lawmaking authority over the liquor licensing process; (3) the ordinance violates the enforcement and appeal procedure in Iowa Code sections 123.32 and .39 because the ordinance "allows the ZBOA to place any conditions it sees fit upon [a] CUP, allows the zoning enforcement officer to *unilaterally* make a determination that the licensee has violated the conditions established by the ZBOA, and then allows that same ZBOA to revoke the CUP" after which the City "applies to the ABD for revocation of the Liquor License"; (4) the ordinance violates the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and article I, section 6 of the Iowa Constitution because the ZBOA can impose different restrictions on similar establishments that are arbitrary and capricious; and (5) the ordinance constitutes illegal spot zoning by creating arbitrary conditions in CUPs that are different from surrounding establishments. During the pendency of the appeal, Lime Lounge moved to stay the district court's order and reinstate the temporary injunction. We denied the motion and transferred the case to the court of appeals.

The court of appeals affirmed the district court, determining that the state law did not preempt the CUP ordinance, which it viewed as a "land-use regulation, not a regulation on the sale of alcohol." The court of appeals noted that chapter 123 allows cities to regulate " 'activities or matters' that affect the sale of alcohol so long as the regulations protect the 'health, welfare and morals of the community.' " (Quoting Iowa Code § 123.37(2).) The court of appeals distinguished the CUP application fee from the fee imposed in *Iowa Grocery* on

the liquor license application itself. The court of appeals also determined that the Equal Protection Clauses of the United States Constitution and the Iowa Constitution were not violated by the ZBOA imposing "different restrictions on similar businesses" because "the city has a legitimate purpose in ensuring the health, welfare, and safety of the community" to regulate "noise levels, maintain[] clean public spaces, and ensur[e] the area is safe for patrons and other citizens." The court of appeals also rejected Lime Lounge's illegal spot zoning claim, determining the ordinance lawfully limits specific nuisance behavior, which is well within the City's police power.

We granted Lime Lounge's application for further review.

## II. Standard of Review.

"A trial court's determination of whether a local ordinance is preempted by state law is a matter of statutory construction and is thus reviewable for correction of errors at law." *City of Davenport v. Seymour*, 755 N.W.2d 533, 537 (Iowa 2008). Both parties agree that our review of the preemption claims is for correction of errors at law.

"We review constitutional claims de novo." *AFSCME Iowa Council 61 v. State*, 928 N.W.2d 21, 31 (Iowa 2019).

In reviewing a spot zoning challenge, we presume the ordinance and zoning decision "are valid and if their reasonableness is fairly debatable, we will not substitute our judgment for that of the legislative body." *Montgomery v. Bremer Cnty. Bd. of Supervisors*, 299 N.W.2d 687, 692 (Iowa 1980); *see also Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 43 (Iowa 2016) (reiterating that the proper standard is " 'the generally limited scope of review' we utilize in order 'to determine whether the decision by the Board to rezone is fairly debatable' " (quoting *Montgomery*, 299 N.W.2d at 692)).

### III. Analysis.

We first address Lime Lounge's claim that Iowa Code chapter 123 preempts the City's municipal ordinance requiring a CUP. We hold that the City's ordinance is not preempted by Iowa Code section 123.37(1); to the contrary, the ordinance is a proper exercise of the city's zoning authority expressly permitted under Iowa Code section 123.39(2). Next, we address Lime Lounge's argument that the City's ordinance violates the Equal Protection Clauses of the United States Constitution and the Iowa Constitution. This claim also fails. The City has a rational basis for imposing a CUP requirement on premises selling alcohol: minimizing behavior that constitutes a nuisance. Finally, we address Lime Lounge's claim that the ordinance constitutes illegal spot zoning. We hold that the City's ordinance does not constitute spot zoning but grants a special use when specific conditions in the ordinance are met.

**A. Chapter 123 Does Not Preempt the City's CUP Ordinance.** Lime Lounge's main argument rests on preemption. It argues that the City's CUP ordinance requiring specific establishments selling alcoholic beverages to obtain an additional permit and pay an additional fee is expressly preempted by Iowa Code chapter 123 because the state has properly reserved these powers for itself. Lime Lounge argues *Iowa Grocery* is factually indistinguishable and controls the outcome of this case. The City responds that the ordinance is not preempted by state law because chapter 123 allows local authorities to enact ordinances regulating the location of premises selling alcohol. The City also argues that *Iowa Grocery* does not control here, as the fees imposed in that case are different from the fees imposed in the CUP application. We agree with the City's position.

In 1968, Iowa adopted the "Home Rule Amendment" to its constitution. *Iowa Grocery*, 712 N.W.2d at 678. The amendment granted municipalities "home rule power and authority, not inconsistent with the laws of the general assembly,

to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly." Iowa Const. art. III, § 38A.[1] "[M]unicipal governments may not undertake to legislate those matters which the legislative branch of state government has preserved to itself," *City of Council Bluffs v. Cain*, 342 N.W.2d 810, 812 (Iowa 1983), but municipalities may exercise their police powers "over local affairs" without any "express legislative approval or authorization," *Seymour*, 755 N.W.2d at 538.[2]

"In order to determine whether municipal action is permitted or prohibited by the legislature, courts have developed the doctrine of preemption." *Id.* "The general thrust of the preemption doctrine" is that a municipality "cannot act if the legislature has directed otherwise." *Id.* The "determination of whether a local ordinance is preempted by state law is a matter of statutory construction." *Id.* at 537. We have recognized three types of preemption: express preemption, implied-conflict preemption, and implied-field preemption. *See id.* at 538.

Express preemption "applies where the legislature has specifically prohibited local action in a given area." *Id.* "[E]xpress preemption offers the highest degree of certainty with the added benefit of discouraging unseemly internecine power struggles between state and local governments." *Id.* The legislature's specific language chosen in the statute "ordinarily provides the

---

[1]The Home Rule Amendment "reversed an earlier power structure between municipalities and the legislature." *Bellino Fireworks, Inc. v. City of Ankeny*, No. 4:17–cv–212–RGE–CFB, 2017 WL 11446135, at *4 (S.D. Iowa June 29, 2017). "In 1868, the Chief Justice of the Iowa Supreme Court, John F. Dillon, declared that municipalities were creatures of the legislature and had only those powers expressly granted by the legislature. Later this rule became known as the Dillon Rule." *Seymour*, 755 N.W.2d at 538 n.1 (citation omitted). But now, "[c]ity authorities are no longer frightened by Dillon's ghost," *id.* at 538, as the amendment states that the Dillon Rule "is not a part of the law of this State," Iowa Const. art. III, § 38A.

[2]Iowa Code section 364.2(2) states, "The enumeration of a specific power of a city does not limit or restrict the general grant of home rule power conferred by the Constitution of the State of Iowa. A city may exercise its general powers subject only to limitations expressly imposed by a state or city law."

courts with the tools necessary to resolve any remaining marginal or mechanical problems in statutory interpretation." *Id.*

"Implied-conflict preemption occurs when a local ordinance prohibits an act permitted by a statute or permits an act prohibited by a statute." *Hensler v. City of Davenport*, 790 N.W.2d 569, 585 (Iowa 2010). Implied-conflict preemption is found when "the ordinance cannot exist harmoniously with a state statute because the ordinance is diametrically in opposition to it." *Seymour*, 755 N.W.2d at 538. The state law and the ordinance must be "irreconcilable," and the "conflict must be obvious, unavoidable, and not a matter of reasonable debate." *Id.* at 539.

Implied-field preemption is a "stringent" and "narrow doctrine" that "occurs when the legislature has so covered a subject by statute as to demonstrate a legislative intent that regulation in the field is preempted by state law." *Id.* Implied-field preemption "requires some legislative expression of an intent to preempt home rule authority, or some legislative statement of the state's transcendent interest in regulating the area in a uniform manner." *Goodell v. Humboldt County*, 575 N.W.2d 486, 493 (Iowa 1998) (en banc). We require "persuasive concrete evidence of an intent to preempt the field." *Seymour*, 755 N.W.2d at 539.

Lime Lounge unequivocally stated in its brief that "the only preemption that applies in this case is express preemption," and the court of appeals understandably concluded that Lime Lounge limited its argument to express preemption. However, we decline to limit our review to express preemption. Lime Lounge relies heavily on *Iowa Grocery*—a case that applied implied-conflict preemption. *See Iowa Grocery*, 712 N.W.2d at 680–82 (holding that the "permit transfer fee" ordinance is "patent[ly] inconsisten[t]" with the statutory process in the Iowa Code and that there is "inherent conflict[] between the fee collection

procedures established in the [Code] and those set forth in the ordinance"); *see also Bellino Fireworks, Inc. v. City of Ankeny*, No. 4:17–cv–212–RGE–CFB, 2017 WL 11446135, at *5 (S.D. Iowa June 29, 2017) (describing *Iowa Grocery* as applying implied-conflict preemption). We will address all three types of preemption.

1. *Iowa Grocery.* In its appellate brief, Lime Lounge rests its preemption claim on *Iowa Grocery.* Lime Lounge argues that *Iowa Grocery* is "nearly identical" to the facts here. We disagree. *Iowa Grocery* does not control the outcome in this case.

In *Iowa Grocery*, we addressed whether a Des Moines ordinance was preempted by Iowa Code chapter 123. *See* 712 N.W.2d at 679. The ordinance added the City's administrative fee onto the liquor license application established in Iowa Code sections 123.31 and .32 and added a fee to transfer the liquor license. *Id.* at 677–78. We determined that the transfer fee conflicted with Iowa Code section 123.38, which allowed only the "administrator" of the ABD to "establish a uniform transfer fee," not a local authority. *Id.* at 680 (emphasis omitted) (quoting Iowa Code § 123.38).

Next, we addressed the administrative fee imposed directly on the license application. We began with the text of section 123.1, which states the legislature's intent to "reserve to itself the power to regulate the traffic of alcoholic beverages." *Id.*; Iowa Code § 123.1. We then discussed Iowa Code section 364.6, which requires cities to "substantially comply with a procedure established by a state law for exercising a city power." *Iowa Grocery*, 712 N.W.2d at 680 (quoting Iowa Code § 364.6). We set out four factors to establish whether an ordinance substantially complied with chapter 123's procedure: uniformity, accountability, whether there was an existing repayment mechanism, and whether the ordinance added an additional requirement to the state law. *Id.* at 680–82. If the

ordinance did not substantially comply with the procedure under state law, then the ordinance was preempted. *See id.* at 680.

In *Iowa Grocery*, the City imposed its additional fee directly on the state liquor license application. *See id.* at 677–78. By contrast, the City's CUP fee is not imposed on the state liquor license application. Rather, the City's fee accompanies the CUP application for all applicants, not just those selling alcoholic beverages, and is imposed on other zoning appeal applications, such as special permits, variances, and exceptions.

The CUP application fee relates to the City's zoning enforcement authority, not the liquor license application itself. A CUP is generally sought by an establishment to obtain the "zoning board's authorization to use property in a way that is identified as a special exception in a zoning ordinance." *Special-Use Permit, Black's Law Dictionary* (11th ed. 2019) (describing that "conditional-use permit" is also termed as "special-use permit"). The fee required in a CUP application relates to zoning, not liquor licensing. The district court and court of appeal determined that *Iowa Grocery* only disallowed a fee imposed directly on the liquor license application, not a CUP application fee imposed pursuant to the City's zoning regulation. We agree. Because *Iowa Grocery* does not apply here, we do not address its four-factor test.

2. *Express preemption.* Lime Lounge argues that the ordinance requires an establishment to obtain a CUP to sell alcohol, which is preempted by Iowa Code section 123.37(1). The City argues that this CUP requirement is part of its zoning power to regulate establishments selling alcohol as authorized under Iowa Code section 123.39(2). We agree with the City that its CUP ordinance falls within its local zoning authority.

The fighting issue is whether the ordinance is a zoning regulation or an extra permit to sell alcohol. Chapter 123 grants "limited regulatory powers to

local authorities." *Iowa Grocery*, 712 N.W.2d at 679; *see* Iowa Code § 123.3(27). The Act allows local authorities to "adopt ordinances or regulations for the location of the premises of liquor control licensed and retail wine or beer permitted establishments" and for "any other activities or matters which may affect the retail sale and consumption of alcoholic beverages and the health, welfare and morals of the community involved." Iowa Code § 123.39(2). Yet the Act prohibits any local action "to establish licenses and permits" and bars local authorities from requiring "the obtaining of a special license or permit for the sale of alcoholic beverages." *Id.* § 123.37(1). Express preemption "applies where the legislature has specifically prohibited local action in a given area." *Seymour*, 755 N.W.2d at 538. So, if the ordinance functions as a permit to sell alcohol, then it invades the exclusive prerogative of the state in establishing licenses and permits. *See* Iowa Code § 123.37(1). But if the ordinance functions as a zoning regulation, then it is a proper exercise of the City's ability to regulate "the location of the premises of liquor control licensed and retail wine or beer permitted establishments." *Id.* § 123.39(2). We hold that the ordinance is a proper exercise of the City's zoning power—and not expressly preempted by state law—because the ordinance does not create a separate local alcohol license or licensing scheme; it instead regulates the location and operation of premises selling alcohol consistent with the City's police powers.

Zoning is a core function of a city's police power. *See Montgomery*, 299 N.W.2d at 692 ("Zoning decisions are an exercise of the police power to promote the health, safety, order and morals of society."). The Iowa Code grants local authorities the ability "to regulate and restrict . . . the location and use of buildings, structures, and land for trade, industry, residence, or other purposes." Iowa Code § 414.1. Within chapter 123, the legislature granted local establishments the ability to regulate the location of establishments selling

alcohol, even if it "affect[s] the retail sale and consumption of alcoholic beverages." *Id.* § 123.39(2). Section 123.30(2) contemplates local authorities passing ordinances regulating the location of alcohol establishments, specifying that a liquor license or permit may not be issued for premises that "do not conform to all applicable laws, ordinances, resolutions, and health and fire regulations." *Id.* § 123.30(2). The legislature did not expressly preempt the City's authority to pass ordinances regulating the premises of establishments selling alcohol. Nor did the legislature grant alcohol-licensed establishments special privileges to avoid complying with local zoning regulations.

We view the CUP ordinance as broadly regulating zoning requirements, not simply another fee for a liquor license. The CUP application form is not limited to establishments selling alcohol. *See, e.g.,* Des Moines, Iowa Mun. Code §§ 134-3.4.3 (requiring cemeteries not owned by the City to receive a conditional use permit), -4.5.4 (requiring wireless telecommunications services to obtain a conditional use permit in specific circumstances) (2024). It is a general application seeking a special exception in a zoning ordinance. Conditional use permits "provide for flexibility in what otherwise would be the rigidity of zoning ordinances, while at the same time controlling troublesome aspects of somewhat incompatible uses by requiring certain restrictions and standards." *W & G McKinney Farms, L.P. v. Dallas Cnty. Bd. of Adjustment,* 674 N.W.2d 99, 103 (Iowa 2004); *see also Willett v. Cerro Gordo Cnty. Zoning Bd. of Adjustment,* 490 N.W.2d 556, 560 (Iowa 1992) (describing the purpose of special use permits in the same way). A CUP is a permit to use the land in a certain manner.

Lime Lounge argues that the CUP requirement is disguised as a zoning ordinance but functions like an additional permit to sell alcohol. Lime Lounge asks the question: "[W]hy would anyone obtain a CUP other than to obtain a liquor license for the sale of alcoholic beverages, wine[,] or beer?" But the answer

is simple: A CUP would be sought by anyone seeking "to use property in a way that is identified as a special exception in a zoning ordinance." *Special-Use Permit, Black's Law Dictionary* (11th ed. 2019). The ordinance requires an application for a variance, exception, conditional use permit, special permit, or request for reasonable accommodation. In addition to a business selling wine, liquor, or beer, other examples include a CUP for a business to operate in an "A-1" agricultural district, a bed-and-breakfast in a residential zoning district, and a business in a "U-1" floodplain district. Thus, a CUP may be obtained for purposes other than obtaining a liquor license to sell alcohol. This shows that the CUP ordinance lawfully regulates land use.

The California Court of Appeals so held when reviewing a similar challenge to a zoning ordinance requiring a conditional use permit for "owners of retail establishments selling alcoholic beverages for off-site consumption wishing to rebuild after the civil disturbance." *Korean Am. Legal Advoc. Found. v. City of Los Angeles*, 28 Cal. Rptr. 2d 530, 537 (Ct. App. 1994). The appellate court held that the ordinance was not preempted by the California Alcoholic Beverage Control Act or the state constitution, which provides the state with "the exclusive right and power to license and regulate" the sale of alcohol within the state. *Id.* at 536 (quoting Cal. Const. art. XX, § 22). The court reasoned that the ordinance did not "directly regulate" the alcohol licenses or the sale of alcoholic beverages. *Id.* at 538. "Instead the focus of the ordinance is to abate or eradicate nuisance activities in a particular geographic area by imposing conditions aimed at mitigating those effects. These are typical and natural goals of zoning and land use regulations." *Id.* We reach the same conclusion here.

The City may place zoning conditions on business operations to protect and promote "the public health, safety, morals and general welfare" of its citizens. Des Moines, Iowa Mun. Code § 134-1.5.1; *see Willett*, 490 N.W.2d at

560; *see also* Iowa Code § 123.39(2). We hold the CUP ordinance is not expressly preempted by chapter 123.

Lime Lounge also challenges the $300 CUP application fee as preempted by state law. Lime Lounge contends that this fee is expressly preempted by statutes governing the "collection, accounting, and distribution of collected fees" in Iowa Code sections 123.32(2), .36, and .143.[3] We disagree.

There is no language in chapter 123 that expressly prohibits the local authority from charging an application fee for a CUP. Lime Lounge cites section 123.37 for the proposition that "the Act does not allow local municipalities to charge any application, transfer, or renewal fees other than the fees set by state statute." But section 123.37 does not reference "fees"; it only discusses licenses, permits, and taxes. *See* Iowa Code § 123.37. And the CUP application fee is not a tax. *See Home Builders Ass'n of Greater Des Moines v. City of West Des Moines*, 644 N.W.2d 339, 347–48 (Iowa 2002) (holding that "fees designed to cover the administrative expense of regulating a particular activity, occupation, or transaction are not taxes"). Section 123.36 does discuss fees related to each retail alcohol license. *See* Iowa Code § 123.36. But it lacks an express prohibition on imposing an extra application fee for zoning requirements. *See id.* This is why in *Iowa Grocery* we analyzed the administrative fee under implied-conflict preemption and never referenced express preemption. *See Iowa Grocery*,

---

[3]Iowa Code section 123.36 governs the retail alcohol license fees that must be filed along with the liquor license application. The section differentiates between the specific class of liquor license, the population of the city, and the size of the premises where the alcohol will be sold. Iowa Code § 123.36(1)–(7), (9). Section 123.36(8) authorizes ABD to pool all fees in a "beer and liquor control fund" and requires the ABD to "remit to the appropriate local authority" a specific percentage of the application fees. Section 123.32(2) states that the local authority "shall forward the application with the necessary fee and bond, if required, to the [ABD]." Section 123.143(1) allows the local authority to retain "[a]ll retail beer permit fees . . . at the time application for the permit is made."

712 N.W.2d at 680–82. Nothing in chapter 123 expressly preempts the City's CUP application fee.

3. *Implied preemption.* Lime Lounge argues that the City's ordinance and the state law are in direct conflict with one another. It claims that the CUP ordinance is inconsistent with the limited powers granted to local authorities under chapter 123. The City responds that these two laws are easily harmonized and regulate different matters. We agree with the City's position.

"Implied-conflict preemption occurs when a local ordinance prohibits an act permitted by a statute or permits an act prohibited by a statute." *Hensler*, 790 N.W.2d at 585. Implied-conflict preemption is found only when the ordinance and the state law are "irreconcilable." *See Seymour*, 755 N.W.2d at 538. The "conflict must be obvious, unavoidable, and not a matter of reasonable debate." *Id.* "We presume that the municipal ordinance is valid," and construe the ordinance and state law to give effect to each if possible. *Id.* at 539.

The CUP ordinance is easily harmonized with the broad language in section 123.39(2) that expressly allows cities to adopt ordinances to regulate the location of establishments selling alcohol. Iowa Code § 123.39(2). This statute also allows cities to adopt ordinances governing any activity that "may affect the retail sale and consumption of alcoholic beverages." *Id.* The City's CUP ordinance does just that. It regulates the location and operation of alcohol establishments, such as trash removal and noise levels.

Lime Lounge relies on language that limits the City's ability to impose a special license or permit on establishments "for the sale of alcoholic beverages." *Id.* § 123.37(1). Section 123.37(1) precludes local authorities from creating special licenses to sell alcohol. It does *not* prohibit local authorities from imposing zoning regulations on establishments that sell alcohol. As the court of appeals and district court concluded, the CUP ordinance is a lawful zoning

regulation that is consistent with chapter 123. While the ordinance affects businesses that sell alcohol, it does not conflict with section 123.37(1). *See id.* § 123.39(2); *see also Korean Am. Legal Advoc. Found.,* 28 Cal. Rptr. 2d at 539 ("That the conditions imposed under the ordinance may have some indirect impact on the sale of alcoholic beverages does not transmute the purpose and scope of the ordinance into a regulation merely seeking to control alcohol sales.").

The CUP application fee is not prohibited by chapter 123. As explained above, the CUP application fee differs from the fee disallowed in *Iowa Grocery* because the City's fee is imposed on its CUP application, not on the state's liquor license application. We see no conflict preemption.

Nor does implied-field preemption aid Lime Lounge. Implied-field preemption occurs "when the legislature has 'cover[ed] a subject by statutes in such a manner as to demonstrate a legislative intention that the field is preempted by state law.'" *Goodell,* 575 N.W.2d at 493 (alteration in original) (quoting *Cain,* 342 N.W.2d at 812). The legislature "chose to reserve to itself the power to regulate the traffic of alcoholic beverages," but "it also gave limited regulatory powers to local authorities." *Iowa Grocery,* 712 N.W.2d at 679. Chapter 123 "allows local authorities to 'adopt ordinances or regulations for the location of the premises of retail wine or beer and liquor control licensed establishments.'" *Id.* (quoting Iowa Code § 123.39(2)). A contrary holding would unduly restrict local authority over zoning and nuisance abatement.

We hold that chapter 123 does not preempt Des Moines' CUP ordinance. The laws regulate different subjects and are easily harmonized.

**B. Lime Lounge's Equal Protection Claims Fail.** Lime Lounge argues that the ordinance violates the Equal Protection Clauses of the United States Constitution and the Iowa Constitution by imposing arbitrary and capricious conditions on liquor-licensed establishments. Specifically, Lime Lounge argues

that the ordinance impermissibly requires a CUP for some businesses that sell alcohol, such as bars, but not others, such as restaurants and grocery stores. Lime Lounge further argues the ordinance allows the ZBOA to "impose virtually *any* condition which it can contemplate—and, more onerously—on an individualized basis." The City argues that these restrictions and conditions are not arbitrary, as the different restrictions are imposed based on the type of business and type of alcohol sold. We conclude that the district court and court of appeals correctly rejected Lime Lounge's equal protection claims.

We begin our analysis by reiterating that zoning ordinances and decisions are presumed valid. "Zoning decisions are an exercise of police powers the state delegates to municipalities." *TSB Holdings, L.L.C. v. Bd. of Adjustment*, 913 N.W.2d 1, 14 (Iowa 2018). "A zoning ordinance, including any amendments to it, carries a strong presumption of validity." *Id.* (quoting *Neuzil v. City of Iowa City*, 451 N.W.2d 159, 163 (Iowa 1990)). "The challenger must rebut and overcome the strong presumption that the rezoning is valid." *Id.* "The challenger 'must show the ordinance is unreasonable, arbitrary, capricious or discriminatory, with no reasonable relationship to the promotion of public health, safety, or welfare." *Id.* (quoting *Shriver v. City of Okoboji*, 567 N.W.2d 397, 401 (Iowa 1997)). Lime Lounge falls short of meeting this burden.

"We usually deem the federal and state equal protection clauses to be identical in scope, import, and purpose." *Bowers v. Polk Cnty. Bd. of Supervisors*, 638 N.W.2d 682, 689 (Iowa 2002). While Lime Lounge argues that the ordinance is unconstitutional under both the United States and Iowa Constitutions, it does not ask us to interpret the two provisions differently. Therefore, we will apply "the same analysis in considering [its] state equal protection claim[] as we do in considering [its] federal equal protection claim[] under the Fourteenth Amendment to the Federal Constitution." *Id.; see also State v. Tucker*, 959

N.W.2d 140, 146 (Iowa 2021) (reiterating that we generally apply the same analysis under the Iowa and federal equal protection provisions).

"Iowa's equal protection clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Iowa State Educ. Ass'n v. State*, 928 N.W.2d 11, 15 (Iowa 2019) (quoting *Varnum v. Brien*, 763 N.W.2d 862, 878–79 (Iowa 2009)). "To prove an equal protection violation, the plaintiffs must first establish that the statute treats similarly situated individuals differently." *AFSCME Iowa Council 61*, 928 N.W.2d at 38. If the different treatment of similarly situated individuals "does not involve a suspect class or a fundamental right," then the law is subject to rational basis review. *Ames Rental Prop. Ass'n v. City of Ames*, 736 N.W.2d 255, 259 (Iowa 2007). Bar owners are not a constitutionally suspect class, and Lime Lounge is not arguing the violation of a fundamental constitutional right to play loud music. We apply rational basis review. *See Iowa State Educ. Ass'n*, 928 N.W.2d at 15; *cf. FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").

"[T]he rational-basis test is a deferential test." *Residential & Agric. Advisory Comm., LLC*, 888 N.W.2d at 50. "Under the rational basis test, we must determine whether the ordinance in question is rationally related to a legitimate governmental interest." *Id.* The zoning ordinance will be upheld "unless the relationship between the classification and the purpose behind it is so weak the classification must be viewed as arbitrary or capricious." *Ames Rental Prop. Ass'n*, 736 N.W.2d at 259. "[W]e presume that the ordinance is constitutional unless the challenging party is able to meet its burden to 'negat[e] every

reasonable basis that might support the disparate treatment.' " *Residential & Agric. Advisory Comm., LLC*, 888 N.W.2d at 50 (alteration in original) (quoting *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 458 (Iowa 2013)). But our rational basis test, while deferential to legislative bodies, is not toothless. *See Planned Parenthood of the Heartland, Inc. v. Reynolds*, 962 N.W.2d 37, 47 (Iowa 2021).

> Under rational basis review, a statute survives an equal protection challenge "so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational."

*Id.* (quoting *Varnum*, 763 N.W.2d at 879).

The City has a legitimate purpose in imposing a CUP on specific businesses selling alcohol and not others. Zoning decisions by a city "are an exercise of the police power to promote the health, safety, order and morals of society." *Montgomery*, 299 N.W.2d at 692. The City explains that the purpose of the CUP requirement is to "prevent disruption to adjoining residential areas due to noise, vibration or light generated by the liquor licensed businesses, to avoid increased congestion on the streets in surrounding residential areas, and ensure the businesses are [not] operated in a manner that constitutes a nuisance." The East Village is a mixed-use neighborhood that includes residences. Bars differ from restaurants or grocery stores. Bars tend to be louder than restaurants or grocery stores, and bars tend to be louder at night when people living nearby in a mixed-use neighborhood—like the East Village—are trying to sleep. Indeed, Lime Lounge was cited for multiple noise violations, which ultimately led to the revocation of its CUP at issue. The court of appeals concluded that "[r]equiring additional permitting—which delineates noise, lighting, and sanitary

requirements—for certain businesses that are more likely to exhibit additional nuisance behaviors is rationally related to protecting the community." We agree.

Lime Lounge's argument that the Zoning Board can impose any condition in a CUP also fails. The Zoning Board does not have uncontrolled discretion to impose any restrictions. Rather, the Zoning Board may only impose conditions "as may be reasonably required . . . to ensure that the criteria of subsection (b), above, are satisfied." Des Moines, Iowa Mun. Code § 134-954(c) (2019). Subsection (b) lists criteria, such as making sure "[t]he business is sufficiently separated from the adjoining residential area . . . to prevent any noise, vibration[,] or light" from significantly impacting "the adjoining residential uses," or making sure the business does not "unduly increase congestion on the streets." *Id.* § 134-954(b)(3), (4). These criteria are rationally related to the City's purpose for requiring a CUP. Lime Lounge did not assert that the Zoning Board imposed an unreasonable condition in its CUP.

We hold that Lime Lounge's equal protection challenge fails under our rational basis review.

**C. Lime Lounge's Illegal Spot Zoning Claim Fails.** Lime Lounge argues that "the way in which the [o]rdinance functions inherently results in the very definition of illegal spot zoning." We disagree. Spot zoning arises "when a zoning ordinance creates a small island of property with restrictions on its use different from those imposed on the surrounding property." *Jaffe v. City of Davenport*, 179 N.W.2d 554, 556 (Iowa 1970). "Spot zoning is not automatically invalid." *Little v. Winborn*, 518 N.W.2d 384, 387 (Iowa 1994). To determine if the zoning is valid, we consider: "whether the new zoning is germane to an object within the police power," "whether there is a reasonable basis for making a distinction between the spot-zoned land and the surrounding property," and "whether the rezoning is consistent with the comprehensive plan." *Id.* at 388; *see also*

*Perkins v. Bd. of Supervisors*, 636 N.W.2d 58, 68 (Iowa 2001) (reiterating the three-part test for illegality of spot zoning). In essence, the challenger must establish: (1) the zoning ordinance constitutes spot zoning, and (2) the spot zoning is invalid. *See Little*, 518 N.W.2d at 387–88.

"There is a strong presumption of validity of a city ordinance . . . ." *Kane v. City Council*, 537 N.W.2d 718, 724 (Iowa 1995). "Courts reviewing zoning ordinances should not substitute their judgment as to the propriety of the city's action when the reasonableness of the ordinance . . . is fairly debatable." *Id.* "The party asserting the invalidity of a zoning ordinance not invalid on its face has the burden of proving it is arbitrary, unreasonable[,] or discriminatory . . . ." *Jaffe*, 179 N.W.2d at 556.

Lime Lounge cites no case holding that a zoning board engaged in spot zoning by issuing a conditional use permit or a special use permit. "Courts have . . . held that [the] issuance of a special use permit does not present an issue of spot zoning because it involves not a change of zone but rather a permitted use when certain conditions specified in the ordinance are met." Mark S. Dennison, Annotation, *Determination Whether Zoning or Rezoning of Particular Parcel Constitutes Illegal Spot Zoning*, 73 A.L.R.5th 223 § 2[b] (1999), Westlaw (database updated Mar. 2024) (collecting cases); *see Johnson v. Bd. of Adjustment*, 239 N.W.2d 873, 890–91 (Iowa 1976) (holding that the plaintiffs' argument that a special use permit granted to construct a funeral home in West Des Moines constituted illegal spot zoning was "patently without merit" because the zoning authority had granted a special exception to the funeral home, as long as it still "satisf[ied] the other specific requirements of the ordinance"). "Spot zoning is . . . a concept of land [c]lassification," and the City's ordinance "does nothing to alter the zoning classification of the land." *Appeal of Kates*, 393 A.2d 499, 501

(Pa. Commw. Ct. 1978) (finding that a zoning board's grant of special exceptions to four different landowners did not constitute spot zoning).

Spot zoning normally consists of specific property zoned for one specific use. Then, a specific parcel within that zone is rezoned for a different use. This creates a parcel of land surrounded by property that is zoned differently. This is the scenario discussed in *Little v. Winborn*, 518 N.W.2d 384. In concluding that the rezoning ordinance constituted spot zoning, we stated, "[The] property [in dispute] "is surrounded by land zoned A-1. Rezoning this parcel to A-2 would create an island of property with restrictions on its use different from those imposed on surrounding property." *Id.* at 388.

The district court correctly determined that Lime Lounge failed to "provide[] sufficient evidence to support a finding that the ordinance" resulted in spot zoning. Lime Lounge noted four examples of CUPs granted to nearby bars in the East Village. The noise restrictions on three of those bars were quite similar to those the City imposed on Lime Lounge. The court of appeals agreed that Lime Lounge made no showing that its property is a "small island" with different restrictions. And the court of appeals further found Lime Lounge failed to show illegality:

> Even if we were to consider this spot zoning, it would not be illegal. As noted above, the noise restrictions and other directives limiting nuisance behavior fall squarely within the city's police power. Furthermore, in the mixed-use community, utilizing permits with varied directives allows the city to pursue the dual goals of maintaining an entertainment district while also limiting the disturbances to the residential buildings in the area. Finally, the zoning in this case is consistent with that plan—establishments are given conditions that are relevant to limiting nuisance behavior for the surrounding buildings. Des Moines's zoning does not constitute illegal spot zoning.

We agree and hold that Lime Lounge failed to prove the City engaged in illegal spot zoning.

**IV. Disposition.**

For these reasons, we affirm the decision of the court of appeals and the district court judgment dismissing Lime Lounge's challenge to the City's CUP ordinance.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Christensen, C.J., who takes no part.